UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

MMS TRADING COMPANY PTY LTD., *an Australian Company d/b/a Connetix Tiles*,

        Plaintiff,

   v.

HUTTON TOYS, LLC, *a New York limited liability company*,

        Defendant.

-------------------------------------------------------------

**MEMORANDUM & ORDER**
20-CV-1360 (MKB)

MARGO K. BRODIE, United States District Judge:

  Plaintiff MMS Trading Company Pty Ltd. commenced the above-captioned action against Defendant Hutton Toys LLC, among others,[1] on March 13, 2020, alleging that Defendant fraudulently filed a copyright infringement complaint against Plaintiff on Amazon.com based on an invalid copyright in magnetic tile toys, resulting in the removal of Plaintiff's product from Amazon and a loss to Plaintiff of sales and goodwill. (Compl. ¶ 1, Docket Entry No. 1.) Plaintiff seeks declarations of copyright invalidity and noninfringement and asserts claims of trade libel, intentional interference with contract, and intentional interference with prospective economic advantage. (*Id.* ¶¶ 34–63.) Defendant moves to dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Plaintiff opposes the motion.[2]

---

[1]  The Complaint also names 18th Avenue Toys Ltd. and Yaacov Schwartz as defendants, but they are no longer parties to the case. (Stipulation of Dismissal, Docket Entry No. 12.)

[2]  (Def.'s Mot. to Dismiss, Docket Entry No. 13-1; Def.'s Mem. in Supp. of Def.'s Mot. ("Def.'s Mem."), Docket Entry No. 13; Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n"), Docket Entry No. 22; Def.'s Reply Mem. in Supp. of Def.'s Mot. ("Def.'s Reply"), Docket Entry No. 23.)

For the reasons set forth below, the Court grants in part and denies in part Defendant's motion and grants Plaintiff leave to file an amended complaint.

## I.   Background

The Court assumes the truth of the factual allegations in the Complaint for the purposes of this Memorandum and Order.

### a.   The market for magnetic tile toys

Plaintiff and Defendant are competitors in the crowded magnetic tile toy market. (Compl. ¶¶ 2–3, 10.)  "Industrywide, the designs of the various magnetic tile toys on the market are similar because so many of the core features of the designs are purely functional."  (*Id.* ¶ 16.) "For example, the corners are rounded to avoid sharp edges that could injure . . . children," "[t]he interior lattice of the tiles includes pockets to hold magnets that help bind different tiles together," and "[t]he tiles include rivets to fasten the two halves of the tiles together."  (*Id.*)

### b.   Defendant's design patent and copyright registration

In September of 2014, the U.S. Patent and Trademark Office issued former defendant Yaakov Schwartz, the president of former defendant 18th Avenue Toys Ltd., U.S. Patent number D713,891 on the following designs:



(*Id.* ¶ 21.)  Several months later, 18th Avenue Toys Ltd. began selling SHAPE Mags magnetic

tiles, claiming a date of first publication of May 1, 2015.[3]  (*Id.* ¶ 11.)  A year later, in March of

2016, Schwartz registered SHAPE Mags with the U.S. Copyright Office and the office issued to

Schwartz Certificate of Registration number VA 1-998-106.  (*Id.* ¶ 23.)  In January of 2019,

Schwartz assigned all the rights to both the patent and the copyright to Defendant.  (Assignment

of Patent and Copyright, annexed to Decl. of Christopher W. Niro as Ex. D, Docket Entry No.

13-6.)  The subject matter of the design patent is essentially the copyrighted material.  (Compl.

¶ 1.)  The copyright includes the following designs:



(*Id.* ¶ 23.)

---

[3]  The Copyright Act defines "publication" as:

> the distribution of copies or phonorecords of a work to the
> public by sale or other transfer of ownership, or by rental,
> lease, or lending.  The offering to distribute copies or
> phonorecords to a group of persons for purposes of further
> distribution, public performance, or public display,
> constitutes publication.  A public performance or display of
> a work does not of itself constitute publication.

17 U.S.C. § 101.

### c.   Defendant's alleged anticompetitive scheme

Plaintiff alleges that, although design patent protection is limited to "original and ornamental design[s]," 35 U.S.C. § 171(a), the drawings in Defendant's design patent "do not include any ornamental designs distinct from the functional features of the magnetic tiles," (Compl. ¶ 22).  Similarly, although copyright protection is limited to "original works of authorship," 17 U.S.C. § 102, and excludes "useful articles" that do not have "pictorial, graphic, or sculptural features" that "can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article," *id.* § 101, Plaintiff alleges that Defendant's copyright registration "claims only functional features of the magnetic tiles and is thus invalid," (Compl. ¶ 24).  Plaintiff asserts that because Defendant and/or 18th Avenue did not complete and begin selling SHAPE Mags until "much later than the launch and sale of many other similar magnetic tile toys," (*id.* ¶¶ 10, 26), they were "well aware of the crowded nature of the magnetic tile toy market" and of the fact that they were "not the original creator of the functional features claimed" in the patent and copyright, including the rounded edges, internal lattice structure, and pockets for magnets, yet they persisted in seeking design patent and copyright protection "with the intent to stifle competition, not to protect novel ornamental designs that [they] had created."  (*Id.* ¶¶ 22, 25.)  Plaintiff further asserts that, having obtained these protections, Defendant now regularly files "fraudulent infringement complaints to Amazon" to hinder competition "in the crowded magnetic tile toy space, despite [its] knowledge that [its copyright] is invalid and not infringed upon."  (*Id.* ¶ 20.)  As a result, the validity of Defendant's copyright registration in SHAPE Mags has been challenged before.  (*Id.* ¶ 19 (citing Complaint, *Laltitude, LLC v. 18th Avenue Toys, Ltd.*, No. 16-CV-6562 (C.D. Cal. Aug. 31, 2016) ("*Laltitude* Complaint"), annexed to Compl. as Ex. A, Docket Entry No. 1-2).)

### d.    Plaintiff's entry into the U.S. market

Plaintiff is an Australian private company and importer of consumer goods, including the popular magnetic tile toy brand Connetix® TILES.  (*Id.* ¶ 2.)  "Connetix® TILES were first introduced in Australia in 2019" and "were first made available for sale" in the United States in May of 2019.  (*Id.* ¶¶ 13–14.)  "Consumers quickly took notice of [them,] as evidenced by a high volume of sales on Amazon.com."  (*Id.* ¶ 15.)

### e.    Defendant's allegedly fraudulent copyright complaint against Plaintiff

On November 2, 2019, Defendant "sent a copyright complaint to Amazon.com based on [Plaintiff's] alleged infringement of [Defendant's] copyright registration."  (*Id.* ¶ 27.)  That same day, "without vetting the veracity of the content of [the] copyright registration," Amazon removed Plaintiff's product listings.  (*Id.* ¶ 28.)  On November 6, 2019, Defendant emailed Plaintiff accusing it of copyright infringement and demanding that Plaintiff provide documents relating to its purchase, sale, and remaining inventory of the alleged infringing products.  (*Id.* ¶ 29 (citing Take-Down Notice Enclosing Certificate of Registration ("Email & Certificate"), annexed to Compl. as Ex. C, Docket Entry No. 1-4).)  Defendant's email, which is attached to the Complaint and which enclosed its copyright registration, also contained several thumbnail images of Plaintiff's products:



(Email & Certificate.)

Since Amazon removed Plaintiff's products, Plaintiff "has received many inquiries from customers regarding the availability of the Connetix® TILES sets" and "has lost, and continues

to lose, considerable sales and goodwill." (*Id.* ¶ 30.)  In addition, Plaintiff's "unsold inventory is a financial loss." (*Id.*)  Plaintiff alleges that Defendant acted in bad faith because it "made these copyright infringement allegations despite the knowledge that it had no enforceable rights" and despite the knowledge that Plaintiff's products "did not infringe on any protectable features" of Defendant's products "with the intent of depriving [Plaintiff] of marketing and sales channels to harm [its] place in the market." (*Id.* ¶ 27.)  In addition, Plaintiff alleges that Defendant "intentionally waited until just before the holiday season to initiate a complaint with Amazon in an attempt to enhance the harm to [Plaintiff's] sales channels and prevent [it] from availing itself of a particularly lucrative time." (*Id.* ¶ 31.)  Plaintiff also alleges that Defendant's "anticompetitive use" of its copyright registration has "disrupted [Plaintiff's] relationship with its distributors and resellers." (*Id.* ¶ 32.)

> **f.   Plaintiff's prayer for relief**

Plaintiff seeks to recover the costs of this suit; declarations that Defendant's copyright registration is invalid and that Plaintiff has not infringed it; disgorgement of Defendant's ill-gotten gains; compensatory damages for the harm caused by Defendant's alleged trade libel, intentional interference with contract, and intentional interference with prospective economic advantage, including lost profits; a preliminary injunction and a permanent injunction requiring Defendant to withdraw any Amazon.com take-down requests against Plaintiff and its products and preventing Defendant from conducting any future take-down requests with respect to Plaintiff; and punitive damages. (*Id.* at 17–18.)

## II. Discussion

### a. Standards of review

#### i. Motion to dismiss

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

#### ii. Declaratory judgment

The Declaratory Judgment Act provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007). For the purposes of the Declaratory Judgment Act, "actual controversy" means "whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse

7

legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc.*, 549 U.S. at 127 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)); *see also Nike, Inc. v. Already, LLC*, 663 F.3d 89, 95 (2d Cir. 2011), *aff'd*, 568 U.S. 85 (2013).  "[A] mere demand for declaratory relief does not by itself establish a case or controversy necessary to confer subject matter jurisdiction." *Chelsea Grand, LLC v. N.Y. Hotel & Motel Trades Council*, 729 F. App'x 33, 41 (2d Cir. 2018) (quoting *S. Jackson & Son v. Coffee, Sugar & Cocoa Exch.*, 24 F.3d 427, 431 (2d Cir. 1994)).  Rather, where "the remedy sought is a mere declaration of law without implications for practical enforcement upon the parties, the case is properly dismissed." *Id.* at 40 (quoting *Browning Debenture Holders' Comm. v. Dasa Corp.*, 524 F.2d 811, 817 (2d Cir. 1975)).

Federal courts have "unique and substantial discretion in deciding whether to declare the rights of litigants" under the Declaratory Judgment Act.  *MedImmune, Inc.*, 549 U.S. at 136 (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)); *Peconic Baykeeper, Inc. v. Suffolk County*, 600 F.3d 180, 187 (2d Cir. 2010); *see also Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003) ("Courts have consistently interpreted [the Declaratory Judgment Act's] permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear.").  The Second Circuit instructs district courts to consider certain prudential factors in determining whether to exercise their discretion to consider a declaratory judgment action, including:

> [1] whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; . . . [2] whether a judgment would finalize the controversy and offer relief from uncertainty[;] . . . [3] whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; [4] whether the use of a declaratory judgment would increase friction between sovereign

legal systems or improperly encroach on the domain of a state or foreign court; and [5] whether there is a better or more effective remedy.

*New York v. Solvent Chem. Co.*, 664 F.3d 22, 26 (2d Cir. 2011) (alterations in original)

(quoting *Dow Jones & Co., Inc.*, 346 F.3d at 359–60).[4]

### b.   Plaintiff has plausibly alleged that Defendant's copyright is invalid

Defendant argues that the Complaint does not support a claim for copyright invalidity

because its certificate of registration raises a rebuttable presumption that its copyright is valid

and Plaintiff has not alleged facts sufficient to rebut this presumption.  (Def.'s Mem. 4–9.)  In

addition, Defendant argues that its copyright is valid because the subject matter of the copyright

is both original and nonfunctional.  With respect to originality, Defendant argues that the "artistic

---

[4]   Plaintiff argues that it is "entitled to seek relief from this Court and the motion to dismiss should be denied" because "an actual justiciable controversy exists through the credible threat of immediate litigation" created by Defendant's email to Plaintiff reserving the right to add Plaintiff as a defendant in a copyright infringement suit in the Northern District of Illinois if Plaintiff refused to accept a one-year nonexclusive license to use Defendant's copyright.  (Pl.'s Opp'n 3–4; Def.'s Mem. 3.)  Defendant does not respond to this argument.  The Court agrees that it has subject matter jurisdiction over Plaintiff's requests for declaratory relief for the reasons Plaintiff states.  *See, e.g.*, *Pasttime LLC v. Schreiber*, No. 16-CV-8706, 2017 WL 6033434, at *6 (S.D.N.Y. Dec. 5, 2017) (finding that the defendant's "claims to ownership and threat to sue for [copyright] infringement give immediacy and concreteness to the controversy between the parties" and concluding that the *Dow Jones* factors therefore also favored entertaining the action); *see also Lin's Waha Int'l Corp. v. Tingyi (Cayman Islands) Holding Corp.*, No. 17-CV-773, 2018 WL 6573482, at *4–5 (E.D.N.Y. Dec. 13, 2018) (finding actual controversy where the defendant sought a declaration that the plaintiff's copyright was invalid even though the plaintiff had not yet brought a claim against the defendant for copyright infringement); *Gelmart Indus. v. Eveready Battery Co.*, 120 F. Supp. 3d 327, 331 (S.D.N.Y. 2014) ("After *MedImmune*, 'so long as [t]he factual and legal dimensions of the dispute are well defined' and 'nothing about the dispute would render it unfit for judicial resolution,' jurisdiction is not defeated by a party's decision to refrain from taking some action and thus 'make[] what would otherwise be an imminent threat [of suit] at least remote, if not nonexistent.'" (alterations in original) (quoting *AARP v. 200 Kelsey Assocs., LLC*, No. 06-CV-81, 2009 WL 47499, at *6 (S.D.N.Y. Jan. 8, 2009))).  However, this does not resolve whether Plaintiff has plausibly alleged invalidity or noninfringement of the registration.

ornamentation embodied and on display" in its magnetic tiles[5] meets the low threshold of originality required under *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340, 345–46 (1991), and also that "Plaintiff has not cited to a single fact" that could rebut the presumption of originality created by Defendant's registration.  (Def.'s Mem. 5–6; Def.'s Reply 2.)  In support, Defendant argues that "[w]hether other companies made magnetic toys is immaterial" because an author is entitled to a copyright "if he independently contrived a work completely identical with what went before," (Def.'s Mem. 6 (quoting *Alfred Bell Co. v. Catalda Fine Arts*, 191 F.2d 99, 103 (2d Cir. 1951))), and, in any event, "there is nothing in Plaintiff's [C]omplaint that, if true, would tend to show [that] any other entity created artistic works like those embodied in [Defendant's copyright]," (*id.* at 6–7).  With respect to functionality, Defendant similarly argues that its copyright registration is valid because it is not a copyright in only the functional features of magnetic tiles but rather in the artistic ornamentation incorporated in the magnetic tiles.  In support, Defendant argues that "[t]he fact that the creative work [that is the subject of the design patent] was incorporated into what ultimately became a useful object does not diminish the artistic features embodied in the work."  (Def.'s Mem. 7; Def.'s Reply 3.)  In addition, Defendant argues that "a single article may simultaneously be copyrighted and patented, and that is the case regardless of whether the artistic work is incorporated into a functional article or not."  (Def.'s Mem. 7.)  Finally, Defendant argues that "seeking a copyright registration over an industrial article" is not a "misuse" of the copyright laws because it does not matter whether the author and inventor first sought copyright registration and then used the copyrighted material in an industrial application or vice versa."  (*Id.* at 8.)

---

[5] By "artistic ornamentation," Defendant apparently refers to the subject matter of the design patent.

Plaintiff argues that Defendant's copyright is invalid due to "a lack of originality and claiming only functional features." (Pl.'s Opp'n 4.) With respect to originality, Plaintiff argues that SHAPE Mags lack the requisite originality to qualify for copyright protection because "Defendant is not the original creator of magnetic tile toys" and did not "independently contrive" SHAPE Mags but rather copied them from other magnetic tile toys that were already on the crowded magnetic tile toy market. (*Id.* at 7–8.) In support, Plaintiff argues that "Defendant has been charged with copying other products and has possibly attempted to claim to be the original owner time and again," which shows that "Defendant was familiar with these previous magnetic tile toys" and that its work "does not contain any elements that demonstrate originality[,] as parallel actions have been settled out of court."[6] (*Id.*) In addition, Plaintiff argues that "when the purely functional aspects are removed from the work, all that's left are basic geometric shapes," which "have existed in the public domain" and thus are "not the original work of Defendant." (*Id.* at 8–9.) With respect to functionality, Plaintiff argues that Defendant's copyright registration is invalid because it claims only functional features that are not subject to copyright protection. (*Id.* at 6–7.) Relying on *Star Athletica L.L.C. v. Varsity Brands, Inc.*, 580 U.S. ---, ---, 137 S. Ct. 1002 (Mar. 22, 2017), Plaintiff argues that Defendant's tiles are devoid of pictorial, graphic, or sculptural features that 'can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.'" (*Id.* at 6.)

"The Copyright Act of 1976 defines copyrightable subject matter as 'original works of authorship fixed in any tangible medium of expression.'" *Star Athletica L.L.C. v. Varsity*

---

[6] Plaintiff appears to refer to the action brought by Laltitude LLC in the Central District of California, the complaint from which Plaintiff has attached to its pleading and which closely resembles Plaintiff's pleading. (*See* Stipulation of Dismissal with Prejudice, *Laltitude LLC v. 18th Avenue Toys, Ltd.*, No. 16-CV-6562 (C.D. Cal. Jan. 3, 2017), Docket Entry No. 24.)

*Brands, Inc.*, 580 U.S. ---, ---, 127 S. Ct. 1002, 1007 (Mar. 22, 2017) (quoting 17 U.S.C. § 102(a)). "'Works of authorship' include 'pictorial, graphic, and sculptural works,' which the statute defines to include 'two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans." *Id.* (first quoting 17 U.S.C. § 102(a)(5); and then quoting 17 U.S.C. § 101). In addition, a work of authorship is "'fixed' in a tangible medium of expression" when it is embodied in a "material objec[t] . . . from which the work can be perceived, reproduced, or otherwise communicated." *Id.* (quoting 17 U.S.C. § 101). Although "'pictorial, graphic, and sculptural works' — including toys, *see, e.g.*, *Hasbro Bradley, Inc. v. Sparkle Toys, Inc.*, 780 F.2d 189, 192 (2d Cir. 1985) — are eligible for copyright protection," *LEGO A/S v. Best-Lock Constr. Toys, Inc.*, 404 F. Supp. 3d 583, 611 (D. Conn. 2019) (quoting 17 U.S.C. § 102(a)(5)), "'pictorial, graphic, or sculptural features' of the 'design of a useful article' are eligible for copyright protection as artistic works [only] if those features 'can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article,'" *Star Athletica L.L.C.*, 580 U.S. at ---, 127 S. Ct. at 1007 (quoting 17 U.S.C. § 101); *Jetmax Ltd. v. Big Lots, Inc.*, No. 15-CV-9597, 2017 WL 3726756, at *4 (S.D.N.Y. Aug. 28, 2017). "A useful article is defined as [an] 'article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information.'" *Jetmax Ltd.*, 2017 WL 3726756, at *4 (quoting 17 U.S.C. § 101). "[A] feature incorporated into the design of a useful article is eligible for copyright protection only if the feature (1) can be perceived as a two- or three-dimensional work of art separate from the useful article and (2) would qualify as a protectable pictorial, graphic, or sculptural work — either on its own or fixed in some other tangible medium of expression — if it were imagined separately

12

from the useful article into which it is incorporated." *Star Athletica L.L.C.*, 580 U.S. at ---, 127 S. Ct. at 1007; *Jetmax Ltd.*, 2017 WL 3726756, at *5. "The first requirement — separate identification — is not onerous. The decisionmaker need only be able to look at the useful article and spot some two- or three-dimensional element that appears to have pictorial, graphic, or sculptural qualities." *Star Athletica L.L.C.*, 580 U.S. at ---, 127 S. Ct. at 1010; *Jetmax Ltd.*, 2017 WL 3726756, at *6. "The independent-existence requirement is ordinarily more difficult to satisfy. The decisionmaker must determine that the separately identified feature has the capacity to exist apart from the utilitarian aspects of the article." *Star Athletica L.L.C.*, 580 U.S. at ---, 127 S. Ct. at 1010; *Jetmax Ltd.*, 2017 WL 3726756, at *6. "In other words, the feature must be able to exist as its own pictorial, graphic, or sculptural work as defined in § 101 once it is imagined apart from the useful article." *Star Athletica L.L.C.*, 580 U.S. at ---, 127 S. Ct. at 1010. "If the feature is not capable of existing as a pictorial, graphic, or sculptural work once separated from the useful article, then it was not a pictorial, graphic, or sculptural feature of that article, but rather one of its utilitarian aspects." *Id.*

In addition, "[t]o qualify for copyright protection, a work must be original to the author. Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Acuff-Rose Music, Inc. v. Jostens, Inc.*, 155 F.3d 140, 143 (2d Cir. 1998) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991)); *see also* 17 U.S.C. § 102. "[T]he requisite level of creativity is extremely low; even a slight amount will suffice." *Feist Publ'ns, Inc.*, 499 U.S. at 345. "Originality does not signify novelty; a work may be original even though it closely resembles other works so long as the similarity is fortuitous, not the result of copying." *Id.* "The validity of the copyright 'depends upon originality.'" *Abdin*

13

*v. CBS Broad., Inc.*, 971 F.3d 57, 69 n.5 (2d Cir. 2020) (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 109 (2d Cir. 2001)).  "A copyright is invalid only if the subject work shows no originality — that is, if the copyrighted work is in no way a 'distinguishable variation' on something already in the public domain."  *Re-Alco Indus. v. Nat'l Ctr. For Health Educ.*, 812 F. Supp. 387, 393 (S.D.N.Y. 1993) (quoting *Alfred Bell & Co.*, 191 F.2d at 102).  At the motion to dismiss stage, "the question . . . is whether [the movant has] made sufficiently plausible allegations to justify the creation of an evidentiary record on the question of originality in the first place."  *King-Devick Test Inc. v. NYU Langone Hosps.*, No. 17-CV-9307, 2019 WL 78986, at *4 (S.D.N.Y. Jan. 2, 2019).[7]

"Production of a certificate of registration made before or within five years after first publication of the work constitutes prima facie evidence of the validity of the copyright." *Urbont v. Sony Music Ent.*, 831 F.3d 80, 88–89 (2d Cir. 2016) (first citing 17 U.S.C. § 410(c); and then citing *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999)).  "While "[a] certificate of copyright registration is prima facie evidence of ownership of a valid copyright, . . . the alleged infringer may rebut that presumption."  *Mackenzie Architects, PC v. VLG Real Estates*

---

[7]  A copyright registration may also be declared invalid where the registration was procured by fraud.  *King-Devick Test Inc. v. NYU Langone Hosps.*, No. 17-CV-9307, 2019 WL 78986, at *6–7 (S.D.N.Y. Jan. 2, 2019) ("Where an author has procured a copyright registration by fraud, the registration confers no presumption of validity."); *Mackenzie Architects, PC v. VLG Real Estates Devs., LLC*, No. 16-CV-1105, 2016 WL 4703736, at *13 (Sept. 8, 2016) ("Only the 'knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute reason for holding the registration invalid and thus incapable of supporting an infringement action . . . or denying enforcement on the grounds of unclean hands.'" (quoting *Eckes v. Card Prices Update*, 736 F.2d 859, 861–62 (2d Cir. 1984))).  "A party seeking to establish such a fraud must show at a minimum that the author's 'application for copyright registration [was] factually inaccurate, that the inaccuracies were willful or deliberate, and that the Copyright Office relied on those misrepresentations.'" *King-Devick Test Inc.*, 2019 WL 78986, at *6 (alteration in original) (quoting *Lennon v. Seaman*, 84 F. Supp. 2d 522, 525 (S.D.N.Y. 2000)); *Mackenzie Architects, PC*, 2016 WL 4703736, at *13 (same).  Plaintiff does not argue that Defendant fraudulently procured its copyright registration.

14

*Devs., LLC*, No. 16-CV-1105, 2016 WL 4703736, at \*13 (Sept. 8, 2016) (alteration in original) (quoting *Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 186 (2d Cir. 2012)). "[T]he party challenging the validity of the copyright [registration] has the burden to prove the contrary." *Urbont*, 831 F.3d at 89 (quoting *Hamil Am., Inc.*, 193 F.3d at 98). "That burden may be met by 'other evidence in the record [that] casts doubt on' the registration's validity." *16 Casa Duse, LLC v. Merkin*, No. 12-CV-3492, 2013 WL 5510770, at \*11 (S.D.N.Y. Sept. 27, 2013) (quoting *Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997)), *aff'd in relevant part*, 791 F.3d 247 (2d Cir. 2015); *see also Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149, 166 (2d Cir. 2003).

Schwartz registered the SHAPE Mags copyright on March 30, 2016, almost one year after the date of first publication on May 1, 2015, (Email & Certificate), and subsequently assigned the rights to Defendant, (Assignment of Patent and Copyright). Because the copyright was registered within five years of the date of first publication, the registration creates a rebuttable presumption that the copyright is valid and original. *See* 17 U.S.C. § 410(c); *King-Devick Test Inc.*, 2019 WL 78986, at \*3 (finding same). Notwithstanding this presumption, and even assuming, as Defendant argues, that Plaintiff's functionality arguments are without merit, Plaintiff has alleged facts sufficient to support a plausible inference that the subject matter of Defendant's copyright registration lacks the originality required to warrant copyright protection. Plaintiff has alleged that "many other similar magnetic tile toys" predate Defendant's SHAPE Mags, (Compl. ¶ 26), and that Defendant was "aware of the crowded nature of the magnetic tile toy market" and of the fact that it was "not the original creator of . . . the rounded corners, internal lattice, pockets for magnets, etc." that are common features of these toys, (*id.* ¶ 25). Although Defendant argues that the "artistic ornamentation embodied and on display" in its tiles

15

meets the low threshold for originality, (Def.'s Mem. 5), Plaintiff has alleged that these ornamental designs are not "distinct" from the functional features of the magnetic tiles," (*see id.* ¶¶ 22–26 (stating that Defendant's registration "claims only functional features of the magnetic tiles" and that Defendant sought copyright protection "to stifle competition, not to protect novel ornamental designs")).  In addition, the attachments to the Complaint depict various brands of magnetic tile toys, including predecessor brands, that feature designs and lattice structures similar to the subject matter of Defendant's copyright.  (*See id.* ¶¶ 10, 16; *Laltitude* Complaint 3–7; Email & Certificate.)  Therefore, the Complaint and documents attached to it support a plausible inference that Defendant's tiles lack the originality required to warrant copyright protection.  *See King-Devick Test Inc.*, 2019 WL 78986, at *4 (denying motion to dismiss counterclaim for declaration of copyright invalidity where the defendant alleged that the plaintiff's copyrighted eye-movement test was a "mere copy" of its predecessors, both the copyrighted test and one of its predecessors consisted of four cards that contained rows of single-digit numerals, the visual layout of parts of the copyrighted test bore a "strong resemblance" to the layout of parts of the predecessor test, and it was plausible that the copyrighted test's deviations were not independently created but rather were "lifted" from another predecessor).[8]

### c.   Plaintiff has plausibly alleged noninfringement of Defendant's copyright

Defendant argues that Plaintiff fails to support its claim for a declaratory judgment that it has not infringed on Defendant's copyright because "Plaintiff alleges no facts and relies solely on legal conclusions," including that "it does not infringe," (*see* Compl. ¶ 39), but Plaintiff "never even identifies its own products," (Def.'s Mem. 9).

---

[8]  Because Plaintiff has plausibly alleged a lack of originality, the Court does not consider the parties' arguments with respect to functionality.

Plaintiff argues that it "has met the burden of pleading a cause for non-infringement" because it "identifies the non-infringing products that were the basis for Defendant's threatening letters . . . in both [p]aragraph [thirteen] of the Complaint and in Exhibit B of the Complaint" and because it has attached Defendant's letters to the Complaint. (Pl.'s Mem. 10.) In addition, Plaintiff argues that, "upon extracting the unprotectible elements of Defendant's work, there is no original work of authorship worthy of copyright protection." (*Id.* at 12.) Further, Plaintiff argues that an ordinary observer would not consider the parties' products substantially similar because they differ "in almost every obvious way despite the idea of magnetic tile toys being the same" — namely, "Plaintiff's product uses different colors, sizes and shapes with 'cut outs' located in different places and in different sizes," and it "also uses a unique beveled construction so as to make the individual tiles three dimensional," while "Defendant's product uses a typical flat design." (*Id.*) Finally, Plaintiff appears to argue that, even if its products are substantially similar to Defendant's products, Plaintiff independently contrived its products and therefore is entitled to a declaration of noninfringement. (*See id.* at 11.)

"In a declaratory judgment action seeking a declaration that intellectual property is not infringed, the burden of proof remains with the owner of the intellectual property who must establish infringement." *Noval Williams Films LLC v. Branca*, No. 14-CV-4711, 2018 WL 389092, at *3 (S.D.N.Y. Jan. 11, 2018) (first citing *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191 (2014); and then citing *Classic Liquor Imps., Ltd. v. Spirits Int'l B.V.*, 201 F. Supp. 3d 428 (S.D.N.Y. Aug. 19, 2016)). "To establish a claim of copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Abdin*, 971 F.3d at 66 (quoting *Feist Publ'ns, Inc.*, 499 U.S. at 361). "Since an element of a copyright infringement claim is copyright ownership, the

17

declaratory judgement defendant must establish the copyright ownership *as a matter of law*, if she is to prevail . . . ." *Noval Williams Films LLC*, 2018 WL 389092, at *3. "To satisfy the second element, [a claimant] 'must demonstrate that: (1) the [alleged infringer] has actually copied the [claimant's] work; and (2) the copying is illegal because a substantial similarity exists between the [alleged infringer's] work and the protectible elements of [the claimant's work].'" *Abdin*, 971 F.3d at 66 (quoting *Yurman Design, Inc.*, 262 F.3d at 110).

"The standard test for substantial similarity between two items is whether an 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same.'" *Id.* (quoting *Yurman Design, Inc.*, 262 F.3d at 111). In applying this test, courts consider whether "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Peter F. Gaito Architecture LLC v. Simone Dev. Corp.*, 602 F.3d 57, 66 (2d Cir. 2010) (quoting *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995)). "[W]hen faced with works 'that have both protectible and unprotectible elements,' [this] analysis must be 'more discerning,'" *id.* (quoting *Fisher-Price, Inc. v. Well-Made Toy Mfg. Corp.*, 25 F.3d 119, 123 (2d Cir. 1994)), and the court must instead "attempt to extract the unprotectible elements from [its] consideration and ask whether the protectible elements, standing alone, are substantially similar," *id.* (quoting *Knitwaves, Inc.*, 71 F.3d at 1002); *Abdin*, 971 F.3d at 66 ("[The] 'more discerning' observer test . . . requires 'substantial similarity between those elements, and only those elements, that provide copyrightability to the allegedly infringed [work].'" (second alteration in original) (quoting *Boisson v. Banian, Ltd.*, 273 F.3d 262, 272 (2d Cir. 2001))). However, courts are not required "to dissect [the works] into their separate components[] and compare only those elements which are in themselves copyrightable," *Peter F. Gaito Architecture LLC*, 602 F.3d at

66 (first alteration in original) (quoting *Knitwaves, Inc.*, 71 F.3d at 1003), but instead "are principally guided by comparing the contested design's total concept and overall feel with that of the allegedly infringed work," *Montgomery v. NBC TV*, 833 F. App'x 361, 363 (2d Cir. 2020) (quoting *Peter F. Gaito Architecture LLC*, 602 F.3d at 66).

Although "questions of noninfringement have traditionally been reserved for the trier of fact, . . . it is entirely appropriate for a district court to resolve [these questions] as a matter of law, 'either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar.'" *Peter F. Gaito Architecture LLC*, 602 F.3d at 63–64 (quoting *Warner Bros. Inc. v. Am. Broad. Cos.*, 720 F.2d 231, 240 (2d Cir. 1983)). "These same principles hold true . . . on a motion to dismiss." *Id.*; *see also Montgomery*, 833 F. App'x at 363 ("The absence of substantial similarity can be decided as a matter of law on a motion to dismiss." (citing *Peter F. Gaito Architecture LLC*, 602 F.3d at 64)).

As discussed above, Plaintiff has plausibly alleged that Defendant's copyright registration is invalid due to lack of originality. Because Defendant must establish that it owns a valid copyright and that Plaintiff copied original elements of Defendant's work in order to defeat Plaintiff's claim for a declaration of noninfringement, Plaintiff's allegations are also sufficient to support its noninfringement claim.[9] *See Noval Williams Films LLC*, 2018 WL 389092, at *3

---

[9] The Court notes that Plaintiff has not plausibly alleged that it independently contrived its tiles, as Plaintiff has not alleged any facts about how it created its tiles. Nor has Plaintiff plausibly alleged that the parties' tiles are dissimilar, as Plaintiff has not identified which of its products were removed from Amazon or alleged any of the specifics about its products that it now relies on in arguing that they are not substantially similar to Defendant's products. Although Plaintiff contends that paragraph thirteen of the Complaint and Exhibit B to the Complaint identify its products, paragraph thirteen of the Complaint merely states that "[t]he Connetix® TILES were first introduced in Australia in 2019," and Exhibit B is the second

("Since an element of a copyright infringement claim is copyright ownership, the declaratory judgement defendant must establish the copyright ownership as a matter of law, if she is to prevail . . . .").

> **d.   Plaintiff fails to state its tort claims**

Plaintiff brings three state law claims, including trade libel, intentional interference with contract, and intentional interference with prospective economic advantage. The Court first addresses whether Defendant has invoked immunity from these tort claims under the *Noerr-Pennington* doctrine.

> **i.   *Noerr-Pennington* immunity is unavailable**

As an initial matter, Defendant argues that all three of Plaintiff's tort claims must be dismissed because any assertion of infringement was "a reasonable expression of [Defendant's] opinion that its presumptively valid intellectual property was being infringed." (Def.'s Mem. 10 (arguing that trade libel claim must be dismissed); *id.* at 13–14 (arguing that intentional interference with contract claim cannot be based on "reasonable assertion" of rights and that intentional interference with prospective economic advantage claim must fail absent showing that Defendant's assertions of infringement were "objectively baseless and made with subjective bad faith").)

---

amended complaint in an action that did not involve Plaintiff or Defendant's copyright. (Compl. ¶ 13; Second Amended Complaint, *Valtech, LLC v. 18th Avenue Toys Ltd.*, No. 14-CV-134 (N.D. Ill. Dec. 9, 2014), annexed to Compl. as Ex. B.) In addition, while there are some visual similarities between the thumbnail images of Plaintiff's products that appear in Defendant's email to Plaintiff and the tiles depicted in Defendant's copyright registration, the possibility that the subject matter of Defendant's copyright is not protectible precludes the Court from undertaking a substantial similarity analysis at this early stage.

Plaintiff has not responded to these arguments beyond its general contention that its allegations of bad faith are sufficient to overcome the presumption of validity.  (Pl.'s Opp'n 13–14.)

Defendant appears to be invoking the *Noerr-Pennington* doctrine, "which immunizes parties from antitrust liability for injuries resulting from government action prompted by the parties' [First Amendment] petitioning activities."  *Joblove v. Barr Labs., Inc. (In re Tamoxifin Citrate Antitrust Litig.)*, 466 F.3d 187, 217 (2d Cir. 2006); *see E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136 (1961) ("[T]he Sherman Act does not prohibit two or more persons from associating together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly."); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670 (1965) ("Joint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition."); *see also Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 233 (2d Cir. 2004) ("*Noerr-Pennington* immunity is a First Amendment-based doctrine that protects private parties from liability under the Sherman Act in connection with efforts to petition for anticompetitive legislation.").

Although this doctrine "was first established in the context of concerted petitions for anti-competitive legislation," the Supreme Court has extended it "to apply to concerted actions before courts and administrative agencies."  *Primetime 24 Joint Venture v. NBC*, 219 F.3d 92, 99 (2d Cir. 2000) (citing *Cal. Motor Trans. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)); *Globetrotter Software, Inc. v. Elan Comp. Grp., Inc.*, 362 F.3d 1367, 1376 (Fed. Cir. 2004) (noting that the Supreme Court has extended *Noerr* immunity "to attempts to petition the government for redress through litigation in the courts" (citing *Cal. Motor Transp. Co.*, 404 U.S.

at 510–11)).  In addition, "[c]ourts have extended *Noerr-Pennington* to encompass concerted

efforts incident to litigation, such as prelitigation 'threat letters' and 'settlement offers.'"

*Primetime 24 Joint Venture*, 219 F.3d at 99 (citations omitted) (holding that "[l]itigation,

including good faith litigation to protect a valid copyright, therefore falls within the protection of

the *Noerr-Pennington* doctrine" and does not violate the antitrust laws); *Singh v. NYCTL 2009-A

Tr.*, 683 F. App'x 76, 77 (2d Cir. 2017) (stating that this doctrine "protects efforts to influence

governmental action through litigation," including "concerted actions before courts" and

"concerted efforts incident to litigation" (quoting *Primetime 24 Joint Venture*, 219 F.3d at 99)).

Under the "sham exception" to this doctrine, immunity does not extend to litigation

activity that "is a mere sham to cover . . . an attempt to interfere directly with the business

relationships of a competitor." *Primetime 24 Joint Venture*, 219 F.3d at 99 (quoting *Noerr

Motor Freight, Inc.*, 365 U.S. at 136–38).  "To establish 'sham' administrative or judicial

proceedings, a plaintiff must show that the litigation in question is: (i) 'objectively baseless,' and

(ii) 'an attempt to interfere directly with the business relationships of a competitor through the

use of the governmental process — as opposed to the outcome of that process — as an

anticompetitive weapon.'"  *Id.* (quoting *Prof'l Real Estate Inv., Inc. v. Columbia Pictures Indus.,

Inc.*, 508 U.S. 49, 57 (1993)).  Under this test, "an objectively reasonable effort to litigate cannot

be sham regardless of subjective intent." *Globetrotter Software, Inc.*, 362 F.3d at 1376 (quoting

*Prof'l Real Estate Inv., Inc.*, 508 U.S. at 57).

"The *Noerr-Pennington* doctrine is generally raised as an affirmative defense." *360

Mortg. Grp., LLC v. Fortress Inv. Grp. LLC*, No. 19-CV-8760, 2020 WL 5259283, at *4

(S.D.N.Y. Sept. 3, 2020) (first citing *Primetime 24 Joint Venture*, 219 F.3d at 97; and then citing

*Calabrese v. CSC Holdings, Inc.*, No. 02-CV-5171, 2006 WL 544394, at *4 (E.D.N.Y. Mar. 6,

2006)).  Dismissal is appropriate based on an affirmative defense raised by a pre-answer motion

to dismiss under Rule 12(b)(6) when "it is clear from the face of the complaint, and matters of

which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law."

*Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015) (quoting *Staehr v. Hartford Fin. Servs.

Grp.*, 547 F.3d 406, 425 (2d Cir. 2008)).  "[P]ut another way, [a plaintiff] has no affirmative

obligation to plead facts to show that the *Noerr-Pennington* doctrine does not apply, i.e., that the

sham exception applies."  *360 Mortg. Grp., LLC*, 2020 WL 5259283, at *4.

Assuming *Noerr-Pennington* immunity is available in the context of state law tort

claims,[10] it is not clear from the face of the Complaint that Plaintiff's claims are barred as a

matter of law — that is, that Defendant's prelitigation attempts to enforce its copyright were not

a sham.  The Second Circuit has stated that "[i]n cases in which 'the defendant is accused of

bringing a whole series of legal proceedings,'" the test that applies is not the "retrospective" two-

---

[10]   While several circuits have "applied the *Noerr-Professional Real Estate* line of cases
to bar state-law liability (as opposed to federal antitrust liability) for pre-litigation
communications," *Globetrotter Software, Inc. v. Elan Comp. Grp., Inc.*, 362 F.3d 1367, 1376
(Fed. Cir. 2004) (collecting cases), and while several courts in this circuit, as well as several New
York courts, have applied the doctrine to bar state law tort claims, *Gov't Emps. Ins. Co. v. Hazel*,
No. 11-CV-410, 2014 WL 4628655, at *16 (E.D.N.Y. Aug. 11, 2014) (collecting cases); *Dr.
Reddy's Lab'ys, Ltd. v. aaiPharma Inc.*, No. 01-CV-10102, 2002 WL 31059289, at *13
(S.D.N.Y. Sept. 13, 2002) (collecting cases); *Sutton 58 Assocs. LLC v Pilevsky*, 137 N.Y.S.3d
359, 361 (App. Div. 2020) ("The filing of litigation falls within the protection of the *Noerr-
Pennington* doctrine, which has been applied to bar claims of tortious interference predicated on
the commencement of litigation." (quoting *I.G. Second Generation Partners, L.P. v. Reade*, 793
N.Y.S.2d 379, 381 (App. Div. 2005))); *see also Lewin v. Richard Avedon Found.*, No. 11-CV-
8767, 2015 WL 3948824, at *24 (S.D.N.Y. June 26, 2015) (applying *Noerr-Pennington* to
prelitigation letter to enforce a copyright in context of tortious interference claim), it appears that
the Second Circuit has not yet done so, *see TFTF Cap. Corp. v. Marcus Dairy, Inc.*, 312 F.3d 90,
93 (2d Cir. 2002) (per curiam) (conducting *Noerr-Pennington* analysis with respect to tortious
interference with business relations claim but affirming on other grounds); *Bath Petroleum
Storage, Inc. v. Market Hub Partners, L.P.*, 229 F.3d 1135, 2000 WL 1508873, at *1 (2d Cir.
2000) (unpublished table decision) ("*Noerr-Pennington* immunity is applicable to . . . state-law
claims such as fraud and tortious interference.").

step inquiry but rather a "prospective" test: "Were the legal filings made, not out of a genuine interest in redressing grievances, but as part of a pattern or practice of successive filings undertaken essentially for purposes of harassment?" *Primetime 24 Joint Venture*, 219 F.3d at 99 (quoting *USS-POSCO Indus. v. Contra Costa County Bldg. & Constr. Trades Council*, 31 F.3d 800, 811 (9th Cir. 1994)). Under this test, "[t]he relevant issue is whether the legal challenges 'are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival.'" *Id.* (quoting *USS-POSCO Indus.*, 31 F.3d at 811). In addition, "a pattern of baseless, repetitive claims may . . . lead[] the factfinder to conclude that the administrative and judicial processes have been abused." *Id.* (alteration in original) (quoting *Cal. Motor Transp. Co.*, 404 U.S. at 513).

Plaintiff has alleged that Defendant regularly files "fraudulent infringement complaints to Amazon" to hinder competition "in the crowded magnetic tile toy space" as part of an "anticompetitive scheme" despite its "knowledge that [its copyright] is invalid and not infringed upon." (*Id.* ¶¶ 20, 22, 25.) In addition, Plaintiff has identified a parallel action against Defendant and, as discussed above, has plausibly alleged both invalidity and noninfringement of Defendant's copyright. At this early stage, these allegations are sufficient to overcome Defendant's *Noerr-Pennington* defense. *See Primetime 24 Joint Venture*, 219 F.3d at 99 (finding sham exception plausibly alleged where complaint alleged "simultaneous," "voluminous," and "objectively baseless" challenges made "without regard to whether the challenges had merit" as part of a "coordinated scheme" to impose costs on the plaintiff as a way of stifling competition). Accordingly, the Court declines to dismiss Plaintiff's tort claims as barred by this doctrine.

### ii.   Plaintiff fails to state a trade libel claim

Defendant argues that Plaintiff fails to state its trade libel claim because Defendant's "accusations of infringement against Plaintiff were presumptively valid and cannot be considered 'false statements' made with malice" and because "Plaintiff has failed to sufficiently plead the element of special damages."  (Def.'s Mem. 10; Def.'s Reply 5.)  In support, Defendant argues that any assertion of infringement was "a reasonable expression of [Defendant's] opinion that its presumptively valid intellectual property was being infringed."  (Def.'s Mem. 10.)  In addition, Defendant argues that "Plaintiff's general statement of damages does not satisfy the pleading requirements" because "[w]hen loss of business is claimed in a trade libel claim, a party must identify . . . the customers they have lost [and] set forth the itemized damages."  (*Id.* at 11; Def.'s Reply 5.)

Plaintiff argues that its allegations of bad faith are sufficient to defeat the presumption of validity and that it has not pled "a simple round figure of a dollar amount" because it has alleged damages in excess of $75,000, "which . . . includes lost profits."  (Pl.'s Opp'n 14.)

"To recover for product disparagement under New York law, plaintiffs must show defendants' publication of a defamatory statement directed at the quality of their goods, which statement caused 'special damages.'"  *Bilinski v. Keith Haring Found., Inc.*, 632 F. App'x 637, 641 (2d Cir. 2015) (quoting *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 59 (2d Cir. 2002)); *Pasternack v. Lab. Corp. of Am.*, No. 10-CV-4426, 2014 WL 4832299, at *19 (S.D.N.Y. Sept. 28, 2014) ("The elements of a claim of injurious falsehood, which is also called product disparagement or trade libel, are: (i) falsity of the alleged statements; (ii) publication to a third person; (iii) malice; and (iv) special damages." (quoting *Daniels v. St. Luke's–Roosevelt Hosp. Ctr.*, No. 02-CV-9567, 2003 WL 22410623, at *7 (S.D.N.Y. Oct. 21,

2003))).  Special damages are defined as the "loss of something having economic or pecuniary value." *Bilinski*, 632 F. App'x at 641 (quoting *Albert v. Loksen*, 239 F. 3d 256, 271 & n.13 (2d Cir. 2001)).  "Where loss of customers constitutes the alleged special damages, the individuals 'who ceased to be customers, or who refused to purchase, must be named' and the exact damages itemized." *Fashion Boutique of Short Hills, Inc.*, 314 F.3d at 59 (quoting *Drug Res. Corp. v. Curtis Publ'g Co.*, 7 N.Y.2d 435, 441–42 (1960)); *see also Bilinski*, 632 F. App'x at 641 (same); *Drug Res. Corp.*, 7 N.Y.2d at 441 (holding that if lost customers "are not named, no cause of action is stated" and that "round figures, with no attempt at itemization, must be deemed to be a representation of general damages" (quoting *Reporters' Ass'n of Am. v. Sun Printing & Publ'g Ass'n*, 186 N.Y. 437, 442 (1906))).

Plaintiff has failed to state a claim for trade libel because it has not identified its lost customers and has pled damages as a round number with no attempt at itemization.  Therefore, the Court dismisses this claim.  *See, e.g.*, *Bilinski*, 632 F. App'x at 641 (affirming 12(b)(6) dismissal of trade libel claim for failure to plead special damages where complaint merely asserted that plaintiff "lost the sale of artwork . . . to an unidentified museum in London" because lost customer was not named (citing *Drug Res. Corp.*, 7 N.Y.2d at 441–42)).

### iii.   Intentional interference with contract

Defendant argues that its "reasonable assertion of its . . . rights could not give rise to a claim for . . . tortious interference with contract."  (Def.'s Mem. 14.)  In addition, Defendant argues that "there is no evidence of any contract, the terms of the contract, or any part of the contract that Amazon could have breached," so "even if Plaintiff's assertion as to the existence of a contract with Amazon could be believed, there are no facts to support the existence of any breach."  (*Id.*)  Similarly, although Plaintiff argues that Defendant's conduct has caused various

other "distributors and resellers" to breach their contracts with Plaintiff, "there are no facts supporting the existence of any contracts, identifying the content of such contracts, or identifying who the parties to the contracts may be." (*Id.*)  In sum, Defendant argues that Plaintiff's "vague assertions do not meet the pleading standards to prove the existence of valid, existing contracts between Plaintiff and any particular third-parties, nor do they establish that [Defendant] had knowledge of any contracts or intentionally procured the breach of any such contracts." (*Id.*)

Plaintiff argues that its allegations support a finding that Defendant "knew of" and interfered with Plaintiff's "agreement and/or contractual relationship with Amazon" when it made a bad-faith take-down request to Amazon with respect to Plaintiff's product. (Pl.'s Opp'n 13–14.)  In addition, Plaintiff requests leave to amend the Complaint with respect to this claim. (*Id.* at 14.)

"Under New York law, 'the elements of tortious interference with contract are (1) "the existence of a valid contract between the plaintiff and a third party"; (2) the "defendant's knowledge of the contract"; (3) the "defendant's intentional procurement of the third-party's breach of the contract without justification"; (4) "actual breach of the contract"; and (5) "damages resulting therefrom.""" *Maricultura del Norte, S. de R.L. de C.V. v. Umami Sustainable Seafood, Inc.*, 769 F. App'x 44, 54 (2d Cir. 2019) (quoting *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006)); *see also Red Fort Cap., Inc. v. Guardhouse Prods. LLC*, No. 19-CV-686, 2020 WL 5819549, at *5 (S.D.N.Y. Sept. 30, 2020) (quoting *Kirch*, 449 F.3d at 401).  "The plaintiff must also allege that the defendant's actions were the 'but for' cause of the alleged breach." *SLS Brands, LLC v. Authentic Brands Grp., LLC*, No. 19-CV-8115, 2021 WL 396641, at *2 (S.D.N.Y. Feb. 4, 2021) (quoting *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir. 1990)).

A plaintiff must identify the specific third-party contract with which the defendant allegedly interfered. *See Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., LLC*, 455 F. App'x 102, 104 (2d Cir. 2012) (dismissing a tortious interference with contract claim because the plaintiff's allegation that it had a "long-standing agreement [with the third party] to produce shoes for [the defendant] and other customers" failed to "plausibly plead the existence of a contractual relationship"). A claim for intentional interference with contract is deficient if it "fails to sufficiently plead the existence of a contract," including details regarding "the formation of the contract, the date it took place, and the contract's major terms." *Id.* (citing *Berman*, 580 F. Supp. 2d at 202–03). These requirements were explicitly stated in *Valley Lane Industries Co.* and have been reiterated by district courts in this Circuit. *Id.*; *see also N.Y. Grp. for Plastic Surgery LLP v. Anthem Blue Cross*, No. 20-CV-4234, 2021 WL 310943, at *2 (S.D.N.Y. Jan. 29, 2021) (stating that to plead the existence of a contract, the complaint must specify information regarding "the formation of the contract, the date it took place, and the contract's major terms" (quoting *Emerald Town Car of Pearl River, LLC v. Phila. Indem. Ins. Co.*, No. 16-CV-1099, 2017 WL 1383773, at *7 (S.D.N.Y. Apr. 12, 2017))); *Goldblatt v. N.Y. Inst. of Tech.*, No. 18-CV-265, 2020 WL 5027150, at *7 (E.D.N.Y. Aug. 25, 2020) (same); *Alessi Equip., Inc. v. Am. Piledriving Equip., Inc.*, No. 18-CV-3976, 2019 WL 719252, at *2 (S.D.N.Y. Feb. 20, 2019) (first quoting *Berman*, 580 F. Supp. 2d at 202–03; and then citing *Valley Lane Indus. Co.*, 455 F. App'x at 104).

Even accepting as true Plaintiff's contentions that it had "existing contractual relations with Amazon.com, distributors and resellers, [and] existing and potential customers," (Compl. ¶ 7), Plaintiff has failed to plead any facts regarding the terms of any contracts, the specific parties to any contracts (other than the alleged "agreement/and or contract" with Amazon.com),

28

or any other facts to support a plausible inference that Defendant's actions caused the breach of any contract with Amazon or any other third party. *See Goldblatt*, 2020 WL 5027150, at *7 (dismissing intentional interference with contract claim where the plaintiff did "not point to any specific terms regarding . . . contractual obligations[] or the actual agreement itself"); *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 643 (S.D.N.Y. 2018) (dismissing intentional interference with contract claim where the complaint "fail[ed] to provide any details about the contracts — such as when they were formed, when they took place, and what the major terms were — or even attach the contracts to the complaint"); *Katz v. Travelers*, 241 F. Supp. 3d 397, 408–09 (E.D.N.Y. 2017) (dismissing tortious interference with contract claim where the complaint "merely state[d] that 'insurance carriers and third party independent medical companies [] terminated and/or suspended their contractual relationship with [the plaintiffs] based on the false and misleading statements made by the [d]efendants'" and collecting cases (second alteration in original)); *Plasticware, LLC v. Flint Hill Res., LP*, 852 F. Supp. 2d 398, 404 (S.D.N.Y. 2012) ("Plaintiff has not plausibly alleged adequate details about a specific contract between itself and a third party, but merely has alleged that it has 'agreements' with its customers. This is insufficient."); *Bose v. Interclick, Inc.*, No. 10-CV-9183, 2011 WL 4343517, at *10–11 (S.D.N.Y. Aug. 17, 2011) (dismissing a tortious interference with contract claim where the plaintiff claimed that it had contracts with various parties, but did not give any "facts regarding the terms of the contracts or the specific parties to the contracts"); *Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc.*, 665 F. Supp. 2d 239, 255 (S.D.N.Y. 2009) (denying the plaintiffs leave to amend a tortious interference with contract claim that the court dismissed because the plaintiffs alleged only that the "defendants interfered with their customer contracts" and did not "specify a single customer contract with which [the] defendants interfered"); *see also*

*Ganske v. Mensch*, No. 19-CV-6943, 2020 WL 4890423 (S.D.N.Y. Aug. 20, 2020) (stating that a "plaintiff is required to 'identify a specific contractual term that was breached.'" (quoting *Millar v. Ojima*, 354 F. Supp. 2d 220, 230 (E.D.N.Y. 2005))).

 Accordingly, the Court grants Defendant's motion and dismisses this claim.

### iv. Intentional interference with prospective economic advantage

 Defendant argues that Plaintiff fails to state its claim for intentional interference with prospective economic advantage because it has not alleged facts to support any elements of the claim. (Def.'s Mem. 11–13.) First, Defendant argues that Plaintiff has failed to plead that it had business relations with a third party because it has not pled "exactly which existing customers were dissuaded from buying its products" and the alleged interference with "potential customers" is insufficient. (*Id.* at 11–12.) Second, Defendant argues that Plaintiff has failed to plead that Defendant "knew of or intentionally interfered with any particular business relationship." (*Id.* at 13.) Third, Defendant argues that Plaintiff cannot plausibly allege that Defendant acted for a wrongful purpose or used dishonest, unfair, or improper means because Defendant's allegation of infringement was only an assertion of its opinion that its presumptively valid intellectual property was being infringed. (*Id.*) Finally, Defendant argues that "Plaintiff has failed to allege the sort of business injury necessary to satisfy the last element of the tort — that [Defendant's] alleged interference caused injury to its economic relationships — because "Plaintiff fails to particularize any damages to its *relationships* with its customers." (*Id.*)

 Plaintiff argues that it has plausibly alleged that Defendant "interfered with its prospective economic advantage of lost customers through sales on Amazon.com," as well as with "its existing economic relationship with Amazon," when it made a bad-faith take-down request with respect to Plaintiff's product. (Pl.'s Opp'n 13–14.) Relying on *Godinger Silver Art*

*Ltd. v. Hirschkorn*, 433 F. Supp. 3d 417 (E.D.N.Y. 2019), Plaintiff argues that an allegation of a take-down request is a sufficient basis for a claim of tortious interference with prospective business relations.  (*Id.* at 13.)

"To prevail on a claim for tortious interference with business relations — also known as tortious interference with prospective economic advantage — under New York law, a plaintiff must show that '(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship.'"  *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015) (citation omitted) (quoting *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 547 F.3d 115, 132 (2d Cir. 2008)); *see also Red Fort Cap., Inc. v. Guardhouse Prods. LLC*, No. 19-CV-686, 2020 WL 5819549, at *6 (S.D.N.Y. Sept. 30, 2020) (quoting *Scutti Enters., LLC v. Park Place Ent. Corp.*, 322 F.3d 211, 215 (2d Cir. 2003)) (citing *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006)).  The elements of interference with prospective business relations are similar to those of intentional interference with contract, except that the defendant's conduct must have "acted solely out of malice or used wrongful means."  *Waldbaum v. Laufer Delena Cadicina Jensen & Boyd, LLC*, No. 18-CV-4225, 2019 WL 4735386, at *5 (S.D.N.Y. Sept. 27, 2019) (quoting *Cerveceria Modelo, S.A. De C.V. v. USPA Accessories LLC*, No. 07-CV-7998, 2008 WL 1710910, at *4 (S.D.N.Y. Apr. 10, 2008)).

To state a claim for interference with prospective business relations under New York law, a defendant must have engaged in "conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship."  *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192 (2004); *see also Valley Lane Indus. Co.*, 455 F. App'x at 107 (holding that the

plaintiff's allegations regarding the defendant's conduct "also fail because there is no allegation that this conduct — which was undisputedly directed at [the plaintiff] — proximately caused [the third party] to sever its business relationship with [the plaintiff]"); *G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 768 (2d Cir. 1995) (dismissing interference with prospective business relations claim because alleged conduct was not directed at the plaintiff's customers); *Fiduciary Network, LLC v. Hurley*, No. 19-CV-379, 2020 WL 4475422, at *11 (S.D.N.Y. Aug. 3, 2020) (quoting *Carvel Corp.*, 3 N.Y.3d at 192); *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F. Supp. 477, 482 (S.D.N.Y. 1997) ("Under New York law, in order for a party to make out a claim for tortious interference with prospective economic advantage, the defendant must . . . direct some activities toward the third party . . . ."). New York courts have placed some limits on what constitutes "business relations" by rejecting, for example, a claim containing "only a general allegation of interference with customers without any sufficiently particular allegation of interference with a specific . . . business relationship." *16 Casa Duse, LLC*, 791 F.3d at 262 (quoting *McGill v. Parker*, 582 N.Y.S.2d 91, 95 (App. Div. 1992)). "[T]he plaintiff must allege a specific business relationship with an identified third party with which the defendants interfered." *Mehrhof v. Monroe-Woodbury Cent. Sch. Dist.*, 91 N.Y.S.3d 503, 505 (App. Div. 2019) (first citing *N.Y. Tile Wholesale Corp. v. Thomas Fatato Realty Corp.*, 61 N.Y.S.3d 136 (App. Div. 2017); then citing *Bus. Networks of N.Y., Inc. v. Complete Network Sols., Inc.*, 696 N.Y.S.2d 433 (App. Div. 1999); and then citing *Burns Jackson Miller Summit & Spitzer v. Lindner*, 452 N.Y.S.2d 80 (App. Div. 1982), *aff'd*, 59 N.Y.2d 314 (1983)).

In addition, "[t]he New York Court of Appeals has explained that, 'as a general rule, a defendant's conduct must amount to a crime or an independent tort' in order to amount to tortious interference with a prospective economic advantage.'" *Friedman v. Coldwater Creek,*

*Inc.*, 321 F. App'x 58, 60 (2d Cir. 2009) (quoting *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004)).  "A defendant who has not committed a crime or independent tort or acted solely out of malice may nevertheless be liable if he has employed 'wrongful means,'" which include "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions" and "extreme and unfair economic pressure."  *Id.*  (first quoting *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183 (1980); and then quoting *Carvel Corp.*, 3 N.Y.3d at 190). If the defendant's "motive in interfering . . . was normal economic self-interest," the defendant did not use unlawful means.  *Carvel Corp.*, 3 N.Y.3d at 190.

Plaintiff fails to state a claim for intentional interference with prospective economic advantage.  Plaintiff's general allegations that Defendant's filing of a take-down notice interfered with Plaintiff's "relationships with existing and potential customers" and "with its distributors and resellers" is insufficient to support the first two elements of its claim — that Plaintiff had business relations with a third party and that Defendant interfered with those relations — because it does not identify specific relationships with third parties that existed at the time of the alleged interference.  (Compl. ¶¶ 27–28, 32, 50); *see, e.g.*, *Mehrhof*, 91 N.Y.S.3d at 505.[11]  Nor has

---

[11]  In *Godinger*, the case upon which Plaintiff relies, the court reached the opposite conclusion on similar facts.  *See Godinger Silver Art Ltd. v. Hirschkorn*, 433 F. Supp. 3d 417, 426 (E.D.N.Y. 2019) ("[The] plaintiffs here allege that [the defendant] improperly filed take down notices and therefore prevented sales to third-party customers, sales by third-party retailers and continued transactions with Amazon.  All of this is sufficient to plead interference with [the] plaintiffs' business relationships.").  However, *Godinger*'s findings that the plaintiff plausibly alleged the first and second elements of its claim — business relations with a third party and interference with those relations — are difficult to reconcile with the case law stating that third parties must be specifically identified, that the relationships must be in existence at the time of the alleged interference, and that the defendant's conduct must be directed at the third party. *Compare id.* at 426 & n.8 ("The prospective business relationships plausibly identified in the complaint go far beyond the [plaintiffs' relationship with Amazon].  The first element of this cause of action is satisfied by plaintiffs' pleading of allegations that they had prospective business relations with Amazon, [the] plaintiffs' potential Amazon customers and retail

Plaintiff pled that Defendant's activity was directed at these parties. *360 Mortg. Grp., LLC*, 2020 WL 5259283, at *7 (dismissing claim where the fourth amended complaint did "not contain allegations that [the defendant] directed any of its conduct toward the prospective third-party business relationships identified by [the plaintiff]"); *K&G Elec. Motor & Pump Corp. v. Ingersoll-Rand Co.*, No. 18-CV-2308, 2019 WL 4089546, at *8 (E.D.N.Y. Aug. 27, 2019) (dismissing interference with business relations claim where the plaintiff failed "to allege that the [d]efendant contacted the [purported business relationships] at all prior to its termination of the [a]greement"); *Fleming v. Laakso*, No. 18-CV-1527, 2019 WL 959521, at *11 (S.D.N.Y. Feb. 5, 2019) ("Absent allegations that [the defendant] communicated any defamatory statements to [the third party that the plaintiff had a business relationship with, the] plaintiff cannot establish that [the] defendant interfered with the business relationship."), *report and recommendation adopted*, 2019 WL 952349 (S.D.N.Y. Feb. 26, 2019).

Even assuming Plaintiff has alleged a business relationship with Amazon with which Defendant interfered,[12] Plaintiff nevertheless fails to state a claim because Plaintiff's allegations that it "has lost, and continues to lose, considerable sales and goodwill," that it "has received many inquiries from customers regarding the availability of [the products] that were removed,"

_____

customers that sell [their] products on Amazon."), *with Plasticware v. Flint Hills Res.*, 852 F. Supp. 2d 398, 403 (S.D.N.Y. 2012) (collecting cases where courts have dismissed claims for failing to "adequately allege[] *specific* business relationships with which [the defendant] allegedly interfered"); *and Sedona Corp. v. Ladenburg Thalmann & Co.*, No. 03-CV-3120, 2005 WL 1902780, at *18 (S.D.N.Y. Aug. 9, 2005) (stating that plaintiff must allege that the specific relationship was "in existence at the time of the interference"). Even if the Court were to conclude that Plaintiff has satisfied these elements of the claim, Plaintiff nevertheless fails to state a claim because it has not plausibly alleged the fourth element of its claim — injury to the specific relationship.

[12]  Plaintiff alleges, in connection with its intentional interference with contract claim, that it had "existing contractual relations with Amazon.com" that "had substantial probability of resulting in economic benefit to Plaintiff." (Compl. ¶ 56.)

and that its "unsold inventory is a financial loss" are insufficient to support the fourth element of its claim — that Defendant's acts injured particular relationships.[13]  (Compl. ¶¶ 30, 51–52); *see Alzheimer's Disease Res. Ctr., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 981 F. Supp. 2d 153, 164–65 (E.D.N.Y. 2013) ("While the allegations suggest injury in the form of lost donations, the [plaintiff] fails to particularize any damage to its *relationships* with its donors.").[14]

Accordingly, the Court grants Defendant's motion and dismisses this claim.

---

[13]  Plaintiff has plausibly alleged the third element of its claim — that Defendant acted for a wrongful purpose or used dishonest, unfair, or improper means in initiating its take-down request.  Plaintiff has alleged that Defendant filed its take-down request with "the knowledge that it had no enforceable rights" and "with the intent of depriving [Plaintiff] of marketing and sales channels to harm [its] place in the market."  (Compl. ¶ 27.)  Plaintiff has also alleged that Defendant "intentionally waited until just before the holiday season to initiate a complaint with Amazon in an attempt to enhance the harm to [Plaintiff]," (*id.* ¶ 31), and that Defendant "regularly file[s] fraudulent infringement complaints to Amazon with the sole intent to hinder competition in the crowded magnetic tile toy space, despite [its] knowledge that [its copyright] is invalid and not infringed upon," (*id.* ¶ 20).  Unlike in *Godinger*, where similar allegations were deemed conclusory and insufficient, the fact of the parallel action against Defendant supports a plausible inference that Defendant knew it did not have a valid copyright and therefore made a misrepresentation when it filed a take-down notice.  (*Laltitude* Complaint); *see Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 797 F.2d 70, 75 (2d Cir. 1986) (stating that a lawsuit or the threat of a lawsuit is wrongful "if the actor has no belief in the merit of the litigation" or, "having some belief in the merit of the suit, 'nevertheless institutes or threatens to institute the litigation in bad faith, intending only to harass the third parties and not to bring his claim to definitive adjudication'" (quoting Restatement (Second) of Torts § 767 cmt. c)); *cf. Ace Arts, LLC v. Sony/ATV Music Publ'g, LLC*, 56 F. Supp. 3d 436, 453 (S.D.N.Y. 2014) (finding insufficient unsupported allegations that the defendant "acted with malice and improper means without any legitimate business justification" and that "its claim of copyright infringement is meritless"); *RFP LLC v. SCVNGR, Inc.*, 788 F. Supp. 2d 191, 198 (S.D.N.Y. 2011) (dismissing tortious interference claim where the plaintiff failed to allege that party that sent cease-and-desist letter involving trademark "believed that [it] had no such rights [in the trademark] when the letter was sent").

[14]  *Godinger* is also inapposite on this element of the claim, as it did not analyze injury to a particular relationship.  *See Godinger Silver Art Ltd.*, 433 F. Supp. 3d at 426 (finding sufficient the plaintiffs' allegations that they had the expectation of selling their products during a defined period of time, were unable to do so due to the defendant's take-down request, and had been damaged through lost sales).

e.   **The Court denies Defendant's application to dismiss Plaintiff's request for punitive damages**

Defendant argues that "Plaintiff's request for punitive damages must be dismissed because Plaintiff has failed to allege sufficient facts to support any determination that [Defendant] 'committed gross, wanton, or willful fraud or other morally culpable conduct.'" (Def.'s Mem. 15 (quoting *Topps Co. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 264 (S.D.N.Y. 2005)).)

Plaintiff does not specifically address Defendant's punitive-damages arguments but generally argues that Defendant acted in bad faith by filing a fraudulent take-down notice. (*See generally* Compl.; Pl.'s Opp'n.)

Under New York law, a plaintiff may recover punitive damages on a tort claim where the defendant's actions amount to "gross, wanton, or willful fraud or other morally culpable conduct." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 302 (2d Cir. 2006) (quoting *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 509 (2d Cir. 1991)).  However, "[a] motion to dismiss is addressed to a 'claim' — not to a form of damages."  *Jones v. City of New York*, No. 18-CV-1937, 2020 WL 1644009, at *17 (S.D.N.Y. Apr. 2, 2020) (quoting *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 318 n.5 (S.D.N.Y. 2010)).  "There is no separate cause of action in New York for punitive damages."  *Martin v. Dickson*, 100 F. App'x 14, 16 (2d Cir. 2004); *see also Gilman v. BHC Secs.*, 104 F.3d 1418, 1431 (2d Cir. 1997) ("[B]ecause a plaintiff cannot recover punitive damages unless he 'assert[s] an underlying cause of action upon which a demand for punitive damages can be grounded, there can be no separate cause of action for punitive damages." (alteration in original) (citation omitted) (quoting *Rocanova v. Equitable Life Assurance Soc'y*, 83 N.Y.2d 603, 616 (1994))).  "Because punitive damages are a form of damages, not an independent cause of action, a motion to dismiss a prayer for relief in the form

of punitive damages is 'procedurally premature.'" *Jones*, 2020 WL 1644009, at *17 (quoting *Farina v. Metro. Transp. Auth.*, 409 F. Supp. 3d 173, 220 (S.D.N.Y. 2019)).

Although, as discussed above, the Court finds that Plaintiff has not alleged facts to support its contentions that Defendant acted fraudulently or in bad faith when it filed a take-down request, Plaintiff may be able to state a basis for punitive damages upon repleading its tort claims. Therefore, the Court declines as premature Defendant's request to dismiss Plaintiff's prayer for punitive damages. *See, e.g.*, *Horowitz v. Spark Energy, Inc.*, No. 19-CV-7534, 2020 WL 4917180, at *6 (S.D.N.Y. Aug. 21, 2020); *Hunter v. Palisades Acquisition XVI, LLC*, No. 16-CV-8779, 2017 WL 5513636, at *9 (S.D.N.Y. Nov. 16, 2017); *see also Amusement Indus., Inc.*, 693 F. Supp. 2d at 318 n.5 (collecting cases and noting that "in rejecting attempts to dismiss demands for punitive damages, courts have not undertaken a detailed analysis of whether the factual allegations of the pleading support such a demand").[15]

**f.   Leave to amend**

Plaintiff requests leave to amend the Complaint with respect to its claims for trade libel, intentional interference with contract, and intentional interference with prospective economic advantage claims. (Pl.'s Opp'n 14.)

---

[15]   Although Plaintiff mentions in its prayer for relief that it is also seeking a preliminary injunction "requiring [Defendant] to withdraw any Amazon.com takedown request regarding Plaintiff and/or its product and preventing [Defendant] from conducting any future takedown requests with respect to Plaintiff," (Compl. 17), Plaintiff has not moved for this relief and the parties have not briefed the issue. The Court therefore does not consider the issue. *See, e.g.*, *Gillums v. Semple*, No. 18-CV-947, 2018 WL 3715278, at *6 (D. Conn. Aug. 3, 2018) ("[A] preliminary injunction may be issued 'only on notice to the adverse party.' . . . Accordingly, to the extent [the plaintiff] seeks a preliminary injunction, he may file a motion seeking such relief . . . ." (citation omitted) (quoting Fed. R. Civ. P. 65(a)(1))); *Gp Acoustics Us v. J&V Audio*, No. 17-CV-5305, 2017 WL 11570460, at *2 (S.D.N.Y. Dec. 6, 2017) (declining to consider request for preliminary injunction where "plaintiff has taken no further action to seek such relief, such as moving for a preliminary injunction").

Defendant argues that the Court should dismiss the Complaint in its entirety with prejudice.  (Def.'s Reply 8.)

Rule 15 of the Federal Rules of Civil Procedure provides that "[l]eave to amend should be 'freely give[n] . . . when justice so requires,' but 'should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party[.]'"  *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (second and third alterations in original) (first quoting Fed. R. Civ. P. 15(a)(2); and then quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008)); *see also Kainz v. Bernstein*, --- F. App'x ---, ---, 2020 WL 7488199, at *3 (2d Cir. Dec. 21, 2020) (noting that leave to amend should be freely given).  "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure."  *Jang v. Trs. of St. Johnsbury Acad.*, 771 F. App'x 86, 88 (2d Cir. 2019) (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)); *see also Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) ("[An] [a]mendment is futile if it fails 'to cure prior deficiencies.'" (citing *Panther Partners Inc.*, 681 F.3d at 119)).  "Thus, the standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss."  *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015).  "If the problems with a claim are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to replead would be 'futile' and 'should be denied.'"  *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 510 (S.D.N.Y. 2005) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

The Court grants Plaintiff leave to file an amended complaint in line with this Court's decision within thirty days of the date of this Memorandum and Order with respect to its claims for trade libel, intentional interference with contract, and intentional interference with prospective economic advantage.  The Court also grants Plaintiff leave to plead additional facts with respect to the second element of its noninfringement claim — that it did not copy constituent elements of Defendant's work that are original — including, for example, facts pertaining to Plaintiff's arguments that it independently developed its products and that its products are not substantially similar to Defendant's products.

### III.  Conclusion

For the reasons stated above, the Court grants in part and denies in part Defendant's motion.  The Court denies Defendant's motion as to Plaintiff's claims for declarations of invalidity and noninfringement of Defendant's copyright.  The Court grants Defendant's motion and dismisses Plaintiff's claims for trade libel, intentional interference with contract, and intentional interference with prospective economic advantage for failure to state a claim pursuant to Rule 12(b)(6).  In addition, the Court grants Plaintiff leave to amend its claims for trade libel, intentional interference with contract, and intentional interference with prospective economic advantage within thirty days from the date of this Memorandum and Order, as well as leave to plead additional facts pertaining to its arguments that it independently developed its products and that its products are not substantially similar to Defendant's products.  If Plaintiff elects not to file an amended complaint within thirty days of this Memorandum and Order, the Court will dismiss Plaintiff's trade libel, intentional interference with contract, and intentional interference

with prospective economic advantage claims with prejudice.  Plaintiff's claims for declarations

of copyright invalidity and noninfringement may proceed.

Dated:  March 29, 2021
        Brooklyn, New York


                                    SO ORDERED:


                                    ____s/ MKB_____
                                    MARGO K. BRODIE
                                    United States District Judge